Nos. 25-1657 & 25-1659

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

RONALD L. SCHROEDER, et al.

and

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, ET AL.,

*Plaintiffs-Appellants-Cross-Appellees,*

v.

MARIO TRETO, JR.,

*Defendant-Appellee-Cross-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 3:16-cv-50310 (Johnston, J.)

## MOTION OF HEARTBEAT INTERNATIONAL FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF PLAINTIFFS-APPELLANTS-CROSS-APPELLEES AND AFFIRMANCE IN DEFENDANT'S CROSS-APPEAL

Kelly J. Shackelford
Jeffrey C. Mateer
David J. Hacker
Jeremiah G. Dys
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
kshackelford@firstliberty.org

December 26, 2025

Patrick Strawbridge
Tiffany H. Bates
ANTONIN SCALIA LAW SCHOOL
  SUPREME COURT CLINIC
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

*Counsel for Amicus Curiae*

## MOTION FOR LEAVE TO FILE AMICUS BRIEF

Under Federal Rule of Appellate Procedure 29, Heartbeat International respectfully requests leave to file an amicus brief in support of Cross-Appellees and affirming the district court's decision as to Illinois's benefits-discussion requirement, which requires pregnancy help centers to explain the so-called "benefits" of abortion. Cross-Appellees consent to this request; Cross-Appellant declined consent.

Heartbeat International, Inc. is a 501(c)(3) non-profit, interdenominational Christian organization whose mission is to support the pro-life cause through an effective network of affiliated pregnancy help centers. Heartbeat serves approximately 3,800 pro-life centers, maternity homes, and non-profit adoption agencies in over 100 countries, including more than 2,290 in the United States—making Heartbeat the world's largest such affiliate network.

Heartbeat is concerned with recent state efforts—like the one here—to compel speech merely because it is adjacent to medical practice. If Illinois is allowed to relabel speech as professional conduct, and to compel it on that basis, other states will predictably aim similar laws at pregnancy help centers in those states. Such laws will force pregnancy help centers to dilute their life-affirming message, or otherwise "alter[] the content of [their] speech." *Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (cleaned up). Heartbeat thus has an interest in this important case.

The Supreme Court has made clear that states "cannot choose the protection that speech receives under the First Amendment." *Nat'l Inst. of Fam. and Life Advocs. v.*

*Becerra*, 585 U.S. 755, 773 (2018). Yet that is precisely what the state of Illinois has done here. In "exchange for a liability shield," Public Act 99-690 §6.1(1) requires pregnancy help centers to tell young women about the so-called "benefits" of abortion. Op. at 1. This "compelled discussion," *id.*, thus forces pregnancy help centers to extol the very procedure which they seek to make "unthinkable," *About Us*, Heartbeat Int'l, bit.ly/41Lx8it.

Heartbeat has a "unique perspective" on this case that "an assist" this Court in resolving Defendant's cross-appeal. *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 617 (7th Cir. 2000). The attached briefs explains that upholding laws that recast speech as conduct—like the law at issue here—is especially concerning at a time when states are weaponizing laws against disfavored parties. Following the Supreme Court's opinion in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), pro-abortion extremists have targeted pregnancy help centers with threats and acts of violence. And politicians across the country are introducing laws that "harass caring people that simply want to help women make a different choice than abortion." Jor-El Godsey, *By Accusing Pregnancy Centers Of False Advertising, Pro-Abortion Politicians Prove They Can't Handle The Truth*, The Federalist (Feb. 20, 2023), bit.ly/3KS4161. If this Court allows states to relabel speech as conduct merely because it takes place in a professional setting, states will continue to weaponize those laws against pregnancy help centers.

## CONCLUSION

For these reasons, the Court should grant the motion.

Respectfully submitted,

/s/ *Tiffany H. Bates*

Kelly J. Shackelford                 Patrick Strawbridge
Jeffrey C. Mateer                    Tiffany H. Bates
David J. Hacker                      ANTONIN SCALIA LAW SCHOOL
Jeremiah G. Dys                        SUPREME COURT CLINIC
FIRST LIBERTY INSTITUTE              CONSOVOY MCCARTHY PLLC
2001 West Plano Parkway              1600 Wilson Boulevard, Suite 700
Suite 1600                           Arlington, VA 22209
Plano, TX 75075                      (703) 243-9423
(972) 941-4444                       tiffany@consovoymccarthy.com
kshackelford@firstliberty.org

December 26, 2025                     *Counsel for Amicus Curiae*

4

**CERTIFICATE OF COMPLIANCE**

This brief complies with Rule 27 because it contains 487 words, excluding the parts that can be excluded. This brief also complies with Rule 32 because it is prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

Dated: December 26, 2025                    */s/ Tiffany H. Bates*

**CERTIFICATE OF SERVICE**

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: December 26, 2025                    */s/ Tiffany H. Bates*

Nos. 25-1657 & 25-1659

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

RONALD L. SCHROEDER, et al.

and

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, ET AL.,

*Plaintiffs-Appellants-Cross-Appellees*,

v.

MARIO TRETO, JR.,

*Defendant-Appellee-Cross-Appellant*.

On Appeal from the United States District Court for the
Northern District of Illinois, No. 3:16-cv-50310 (Johnston, J.)

## BRIEF OF *AMICUS CURIAE* HEARTBEAT INTERNATIONAL
## ON BEHALF OF PLAINTIFFS-APPELLANTS-CROSS-APPELLEES

Kelly J. Shackelford
Jeffrey C. Mateer
David J. Hacker
Jeremiah G. Dys
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444
kshackelford@firstliberty.org

Patrick Strawbridge
Tiffany H. Bates
ANTONIN SCALIA LAW SCHOOL
  SUPREME COURT CLINIC
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
patrick@consovoymccarthy.com

December 26, 2025                    *Counsel for Amicus Curiae*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-1657; 25-1659

Short Caption: National Institute of Family and Life Advocates v. Treto

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Heartbeat International

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Consovoy McCarthy PLLC, First Liberty Institute

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Tiffany H. Bates     Date: 12/26/2025

Attorney's Printed Name: Tiffany H. Bates

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address: 1600 Wilson Blvd. Ste. 700

Arlington, VA 22209

Phone Number: (703) 243-9423     Fax Number:

E-Mail Address: tiffany@consovoymccarthy.com

rev. 12/19 AK

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................ii

Interest of *Amicus Curiae* ........................................................................................1

Introduction and Summary of the Argument ........................................................2

Argument ......................................................................................................................3

    I.    Allowing states to restrict disfavored speech by recasting it as conduct will have a disproportionate effect on pregnancy help centers .......................3

    II.   There is a troubling trend of weaponizing laws against pregnancy help centers. ...........................................................................................................5

        A.    Pregnancy help centers face increasing political attacks and unwarranted scrutiny from lawmakers .............................................6

        B.    Pregnancy help centers also increasingly face threats of violence and violent attacks. ............................................................... 13

Conclusion ............................................................................................................ 16

Certificate of Compliance ................................................................................... 17

Certificate of Service ........................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Deboer v. Village of Oak Park,*
    267 F.3d 558 (7th Cir. 2001) ...................................................................4

*Dobbs v. Jackson Women's Health Org.,*
    597 U.S. 215 (2022) ...........................................................................3

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.,*
    879 F.3d 101 (4th Cir. 2018) ........................................................ 15

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010)...............................................................................3

*NAACP v. Button,*
    371 U.S. 415 (1963) ................................................................. 4, 5, 7

*Nat'l Inst. of Fam. and Life Advocs. v. Becerra,*
    585 U.S. 755 (2018) .....................................................1, 2, 3, 4

*United States v. O'Brien,*
    391 U.S. 367 (1968) ...........................................................................3

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ...........................................................................4

## Other Authorities

Andrew Adams & Nika Schoonover, *Illinois Senate Approves Measure to Crack Down on 'Crisis Pregnancy Centers,'* Rockford Register Star (Apr. 3, 2023) ..............9

Censoring Pregnancy Help Ministries, Thomas More Society (Sept. 25, 2024)..........................................................................12, 13

Chris Klint, *FBI Seeks Suspect Who Painted Swastikas on Wasilla Pregnancy Center,* Alaska Public Media (Nov. 8, 2024) ........................................... 14

Corynne McSherry & Rindala Alajaji, *State AGs Must Act: EFF Expands Call to Investigate Crisis Pregnancy Centers* (Mar. 20, 2025)...........................................10, 11

Corynne McSherry, *EFF to State AGs: Time to Investigate Crisis Pregnancy Centers* (Jan. 28, 2025) ......................................................................... 10

Hannah Meisel, *Federal Judge Temporarily Blocks Illinois Law Subjecting 'Crisis Pregnancy Centers' to Civil Liability*, Capitol News (Aug. 4, 2023) ............................. 9

Jeff Jacoby, *Attacks on Pregnancy Centers, Like Attacks on Abortion Clinics, Should Be Intolerable*, Boston Globe (July 17, 2022) ........................................... 13

Matthew McDonald, *Connecticut Crisis-Pregnancy Center Withdraws Lawsuit Against 'Deceptive Advertising' Ban*, National Catholic Register (Jan. 21, 2023) ......................................................................... 9, 10

Michael Gryboski, *NJ Admits to Supreme Court It Had No Complaints Against Targeted Pro-Life Center*, Christian Post (Dec. 2, 2025) .................................... 11, 12

Moira Gaul, *Fact Sheet: Pregnancy Centers–Serving Women and Saving Lives*, Charlotte Lozier Inst. (July 2021) ....................................................... 13, 14

Nancy Flanders, *Pregnancy Center in North Carolina Vandalized Over Labor Day Weekend*, Live Action (Sept. 4, 2024) .................................................... 14

Nathaniel Weixel, *House Democrats Call for Investigation into Crisis Pregnancy Center Funding*, The Hill (July 11, 2024) ................................................. 7

Press Release: Healey-Driscoll Administration Launches First-in-the-Nation Public Education Campaign on the Dangers of Anti-Abortion Centers, Mass. Exec. Off. of Health & Human Servs. (Jun 10, 2024) ................. 8

Press Release: Warren, Bonamici Renew Fight Against Misinformation in Pregnancy Care (Feb. 13, 2025) ................................................................. 8

## INTEREST OF *AMICUS CURIAE*[1]

Heartbeat International, Inc. is a 501(c)(3) non-profit, interdenominational Christian organization whose mission is to support the pro-life cause through an effective network of affiliated pregnancy help centers. Heartbeat serves approximately 3,800 pro-life centers, maternity homes, and non-profit adoption agencies in over 100 countries, including more than 2,290 in the United States—making Heartbeat the world's largest such affiliate network.

Heartbeat is concerned with recent state efforts—like the one here—to compel speech merely because it is adjacent to medical practice. If Illinois is allowed to relabel speech as professional conduct, and to compel it on that basis, other states will predictably aim similar laws at pregnancy help centers in those states. Such laws will force pregnancy help centers to dilute their life-affirming message, or otherwise "alter[] the content of [their] speech." *Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018) (cleaned up). Heartbeat thus has an interest in this important case.

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Civil Procedure, counsel for *amicus curiae* certifies that this brief was not authored in whole or in part by counsel for any party and that no person or entity other than *amicus* curiae or its counsel has made a monetary contribution to the preparation or submission of this brief.

**INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The Supreme Court has made clear that states "cannot choose the protection that speech receives under the First Amendment." *Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 585 U.S. 755, 773 (2018) (*Becerra*). Yet that is precisely what the state of Illinois has done here. In "exchange for a liability shield," Public Act 99-690 §6.1(1) requires pregnancy help centers to tell young women about the so-called "benefits" of abortion. Op. at 1. This "compelled discussion," *id.*, thus forces pregnancy help centers to extol the very procedure which they seek to make "unthinkable," *About Us*, Heartbeat Int'l, bit.ly/41Lx8it.

Pregnancy help centers like Heartbeat International's affiliates offer pregnant women critical resources. Heartbeat believes that no woman should feel so alone or hopeless that she turns to abortion in the mistaken belief that it is her only choice. Heartbeat seeks to empower pregnant women with such support and resources that they can thrive while also giving life to their unborn children. Indeed, Heartbeat's vision is a world where every new life is welcomed and children are nurtured within strong families, according to God's Plan, so that abortion is unthinkable. Heartbeat's entire ministry is built on the ability to speak to pregnant women in need. And laws (like the one here) that restrict what professionals can and cannot utter threaten the ability to carry out that important ministry.

Upholding laws that recast speech as conduct—like the law at issue here—is especially concerning at a time when states are weaponizing laws against disfavored

parties. Following the Supreme Court's opinion in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), pro-abortion extremists have targeted pregnancy help centers with threats and acts of violence. And politicians across the country are introducing laws that "harass caring people that simply want to help women make a different choice than abortion." Jor-El Godsey, *By Accusing Pregnancy Centers Of False Advertising, Pro-Abortion Politicians Prove They Can't Handle The Truth*, The Federalist (Feb. 20, 2023), bit.ly/3KS4161. If this Court allows states to relabel speech as conduct merely because it takes place in a professional setting, states will continue to weaponize those laws against pregnancy help centers. The Court should affirm the decision below with respect to section 6.1(1).

## ARGUMENT

**I.  Allowing states to restrict disfavored speech by recasting it as conduct will have a disproportionate effect on pregnancy help centers.**

The decision below faithfully adheres to the principle that states "cannot choose the protection that speech receives under the First Amendment." *Becerra*, 585 U.S. at 773. If they could, it "would give [states] a powerful tool to impose 'invidious discrimination of disfavored subjects.'" *Id.* Moreover, while regulation of *actual* conduct may evade strict scrutiny under the First Amendment, *see United States v. O'Brien*, 391 U.S. 367, 376 (1968), states cannot re-classify speech as conduct merely to restrict disfavored speech, *see Holder v. Humanitarian L. Project*, 561 U.S. 1, 27-28 (2010).

Yet Illinois attempts to do just that. Section 6.1(1) compels pregnancy centers to promote "an ideological point of view" about a procedure that the centers do not

perform and that the centers "find[] unacceptable." *Deboer v. Village of Oak Park*, 267 F.3d 558, 572 (7th Cir. 2001) (citing *Wooley v. Maynard*, 430 U.S. 705, 715 (1977)). To justify this overreach, Illinois classifies pregnancy help centers' speech as conduct, even though the speech is "unrelated to any procedure or other medical conduct." RSA-99. If upheld, section 6.1(1) would defy *Becerra*, which prohibits states from regulating speech "under the guise of" regulating professional conduct. *Becerra*, 585 U.S. at 769; *NAACP v. Button*, 371 U.S. 415, 439 (1963). It would also encourage states to restrict the speech of pregnancy help centers—frequent targets of anti-speech regulations—with new content-based regulations.

Pregnancy help centers offer pregnant women critical resources. Heartbeat International believes that no woman should feel so alone or hopeless that she turns to abortion, believing it to be her only choice. Its affiliates share resources on parental education, maternity homes, and adoption; they offer pregnant women resources like baby formula, diapers, clothing; and they provide other life-affirming services. Some affiliates also provide ultrasounds and STD/STI testing and/or treatment. Heartbeat affiliates share these resources by informing women of their options regarding their pregnancy.

In so doing, Heartbeat promotes its own life-saving mission: to "reach and rescue as many lives as possible, around the world, through an effective network of life-affirming pregnancy help." *About Us*, Heartbeat Int'l, bit.ly/41Lx8it. Ultimately, Heartbeat seeks to empower pregnant women with such support and resources that they can

thrive while also giving life to their unborn children. Heartbeat's vision is a "world where every new life is welcomed and children are nurtured within strong families, according to God's Plan, so that abortion is unthinkable." *Id.* Indeed, Heartbeat's entire ministry is built on the ability to speak to pregnant women in need. This is plainly speech.

If this Court allows Illinois to relabel speech as professional conduct, and to restrict speech on that basis, other states will predictably follow suit. States will regulate pregnancy help centers' messages, especially their messages to young women in need, simply by labeling the centers' speech as conduct. Shielded from proper scrutiny, such laws will chill the free speech of Heartbeat affiliates and of countless other pregnancy help centers, and they will force pregnancy help centers to dilute their life-affirming message or otherwise "alter[] the content of [their] speech." *Becerra,* 585 U.S., at 766.

## II. There is a troubling trend of weaponizing laws against pregnancy help centers.

Heartbeat affiliates, like other pregnancy help centers, play a vital role in the lives of millions of women and children every year. Heartbeat's mission is to ensure that every woman feels loved and supported during her pregnancy. And Heartbeat affiliates work to ensure that pregnant mothers are equipped with support, resources, and education.

Despite providing this critical function, pregnancy help centers across the country are under attack. After the Supreme Court's opinion in *Dobbs*, pregnancy help

centers have increasingly faced acts of violence, unwarranted scrutiny, and onerous regulations. Upholding laws that recast speech as conduct—like the law at issue here—is especially concerning at a time when laws are being weaponized against disfavored viewpoints.

### A. Pregnancy help centers face increasing political attacks and unwarranted scrutiny from lawmakers.

Pregnancy help centers across the country have increasingly faced political attacks and unwarranted scrutiny from lawmakers. These attacks mark a growing desire to enact new laws and weaponize existing laws to burden pregnancy centers, including by employing privacy laws, deceptive trade practices and truth-in-advertising laws, and licensing and inspection requirements. Although the legal framework may vary, the goal is consistent: use onerous regulation to regulate pregnancy help centers out of existence.

Start with congressional efforts to silence help centers. A United States senator called for Congress to "move more aggressively" in regulating pregnancy help centers. Alison Kuznitz, *U.S. Sen. Elizabeth Warren Wants to Crack Down on 'Deceptive' Crisis Pregnancy Centers in Massachusetts, Across the Country*, MassLive, (Jun. 29, 2022) bit.ly/3oCyQ7f. The same senator then accused life-affirming pregnancy help centers of "torturing" pregnant women and called on the federal government to "shut them down all around the country." Jessica Chasmar, *Google to Crack Down on Search Results for Crisis Pregnancy Centers After Dem Pressure*, Fox Business, (Aug. 25, 2022), bit.ly/40niaPn. Nearly two dozen members of Congress even pressured Google to "crack down on *search results* for

crisis pregnancy centers." *Id.* (emphasis added). And last year, Representatives Jamie

Raskin and Maxwell Frost sent a letter to the Government Accountability Office, calling

on them to investigate Heartbeat International and other pregnancy help center's fund-

ing. Nathaniel Weixel, *House Democrats Call for Investigation into Crisis Pregnancy Center Fund-*

*ing*, The Hill (July 11, 2024), bit.ly/3AS4nsC.

Politicians have resorted to using privacy concerns as a pretext for targeting preg-

nancy centers too. For example, a group of pro-abortion United States senators base-

lessly accused Heartbeat of failing to maintain secure data for the women who seek out

the network's services and resources. *See* Letter from Seven United States Senators to

Heartbeat Int'l (Sep. 19, 2022) (on file with counsel). As Heartbeat responded through

its counsel, that letter appeared simply "to be an unwarranted effort to investigate a

private organization which holds to a religious and ideological opinion with which

[those federal officials] disagree." Letter from Heartbeat Int'l to Sen. Elizabeth Warren,

et al. (Oct. 1, 2022) (on file with counsel). Indeed, political hostility towards pregnancy

help centers and groundless accusations against their operators are at an all-time high.

Federal lawmakers have also targeted pregnancy centers with "deceptive prac-

tices" legislation. In June 2022, after accusing (without evidence) pregnancy centers of

using "deceptive or misleading advertisements about abortion services," a group of

congressmen introduced the "Stop Anti-Abortion Disinformation Act," which would

weaponize the Federal Trade Commission to crack down on entities that discuss preg-

nancy from a life-affirming viewpoint. *See* Nick Popli & Vera Bergengruen, *Lawmakers*

*Scramble to Reform Digital Privacy After Roe Reversal*, Time (Jul. 1, 2022), bit.ly/3L0HFR1.
Several senators reintroduced the bill in February of this year. Press Release: Warren,
Bonamici Renew Fight Against Misinformation in Pregnancy Care (Feb. 13, 2025),
perma.cc/JE4H-2GYB.

There have been similar efforts at the state level. State attorneys general have
threatened and leveraged enforcement actions against facilities that hold life-affirming
views. In June 2022, for example, California Attorney General Rob Bonta issued a con-
sumer alert targeting pregnancy centers, calling them "fake clinics" and accusing them
of employing "deceptive" tactics to get women to choose life. Paul Sisson, *In San Diego,
Attorney General Puts Anti-Abortion Clinics on Notice*, San Diego Union-Tribune, (Jun. 1,
2022), bit.ly/3KYFRIs. That same month, Massachusetts Attorney General Maura
Healey issued a similar consumer advisory warning. David L. Ryan, *Maura Healey Issues
Warning About 'Crisis Pregnancy Centers' in Mass.*, Boston.com (Jul. 6, 2022),
bit.ly/3L3pH0A. Healey accused pregnancy centers of offering "misleading infor-
mation" about their services and falsely claimed that these centers are not required to
keep medical information private or to follow professional medical ethics. *Id.* She en-
couraged women to file complaints against pregnancy centers. *Id.* And as governor,
Healey later launched a $1 million media campaign targeting pregnancy help centers
across social media, radio, billboards and public transit. Press Release: Healey-Driscoll
Administration Launches First-in-the-Nation Public Education Campaign on the

*Dangers of Anti-Abortion Centers*, Mass. Exec. Off. of Health & Human Servs. (Jun 10, 2024), bit.ly/4g7xVkN.

In the last few years, state lawmakers have "introduced or advanced at least 26 bills" targeting life-affirming pregnancy centers for offering alternatives to abortion. Adam Edelman, *Democrats Eye a New Approach to Rein in Crisis Pregnancy Centers*, NBC News (May 18, 2023), perma.cc/N8HU-MYBQ?type=image. In early 2023, Colorado and New Jersey lawmakers introduced bills describing pro-life pregnancy centers as "fake clinics" that "use deceptive advertising to draw in vulnerable people seeking care to harass them with biased and inaccurate information about abortion and contraceptives." *See* Dana DiFilippo, *Deceptive Marketing by Crisis Pregnancy Centers Prompts Bills, Consumer Alert*, New Jersey Monitor, (Jan. 17, 2023), bit.ly/3MNihzB; Brandon Richard, *Opponents Respond to Bill Targeting Anti-Abortion Pregnancy Centers in Colorado*, Denver7 News, (Mar. 18, 2023), bit.ly/3KCRwex. The Illinois Senate passed a similar bill targeting pro-life pregnancy help centers. *See* Andrew Adams & Nika Schoonover, *Illinois Senate Approves Measure to Crack Down on 'Crisis Pregnancy Centers,'* Rockford Register Star (Apr. 3, 2023), bit.ly/3AqVrXl. A federal district court later preliminarily enjoined the law, calling it "both stupid and very likely unconstitutional." *See* Hannah Meisel, *Federal Judge Temporarily Blocks Illinois Law Subjecting 'Crisis Pregnancy Centers' to Civil Liability*, Capitol News (Aug. 4, 2023), perma.cc/J4AL-KWQK. And in May 2021, the Connecticut legislature passed a law banning "deceptive advertising" by pregnancy centers. *See* Matthew McDonald, *Connecticut Crisis-Pregnancy Center Withdraws Lawsuit Against 'Deceptive*

*Advertising' Ban*, National Catholic Register (Jan. 21, 2023), bit.ly/3A2jNWU. But after the law was challenged on First Amendment grounds, Attorney General William Tong conceded in the litigation that he was unaware of any women who had ever been deceived by pregnancy centers. *Id.*

Laws like these show no signs of stopping. Last spring, Members of the North Carolina General Assembly introduced House Bill 522, alleging that pregnancy centers engage in "deceptive practices," and Senate Bill 247, attempting to strip pregnancy help centers of funding. *See* Crisis Pregnancy Center Fraud Prevention Act, perma.cc/8JTE-KUR6; Redirect Crisis Pregnancy Center Funds, perma.cc/Z8BS-JSFF. And earlier this year, activist groups petitioned the Attorneys General of Arkansas, Florida, Missouri, Nebraska, North Carolina, Oklahoma, Tennessee, and Texas to investigate pregnancy centers. *See* Corynne McSherry, *EFF to State AGs: Time to Investigate Crisis Pregnancy Centers* (Jan. 28, 2025), perma.cc/FMT4-JZVB; Corynne McSherry & Rindala Alajaji, *State AGs Must Act: EFF Expands Call to Investigate Crisis Pregnancy Centers* (Mar. 20, 2025), perma.cc/MAD2-3Y3B.

Opponents of pro-life pregnancy centers have also sought to impose overly strict licensing and inspection requirements to make it harder for pregnancy help centers to operate. New York created a task force to investigate only those centers holding a pro-life viewpoint. Micaela Burrow, *New York Law Lets Pro-Abortion Activists Investigate Crisis Pregnancy Centers,* Pregnancy Help News, (Jun. 14, 2022), bit.ly/41ako4W. A co-sponsor of the bill, New York state Senator Brad Holyman, said that the task force would report

on "unlicensed, often misleading facilities that offer pregnancy-related services but don't provide or refer for comprehensive reproductive healthcare" including abortion. *Id.* Legislators in Arizona, Indiana, Kentucky, Minnesota, and New Jersey have also introduced legislation that would impose unnecessary and burdensome licensing requirements on pregnancy help centers. *See* Laura Morel, *Kentucky Lawmaker Pushes to Regulate Anti-Abortion Pregnancy Centers After Reveal Investigation*, Reveal News, (Mar. 27, 2023), bit.ly/418JpO0.

State attorneys general have also attempted to crack down on pregnancy help centers by demanding they turn over sensitive records and private donor information. In November 2023, New Jersey Attorney General Matthew Platkin subpoenaed a pregnancy center "to turn over much of its internal communications as well as communications with patients and donors, some of which would reveal donors' private information." Peter Pinedo, Nat'l Cath. Reg. (May 15, 2024), perma.cc/TM29-KUHA. The Supreme Court heard the case earlier this month, where Platkin admitted at oral argument that the state went after the pregnancy center despite receiving "no complaints" against it. *See* Michael Gryboski, *NJ Admits to Supreme Court It Had No Complaints Against Targeted Pro-Life Center*, Christian Post (Dec. 2, 2025), perma.cc/V5FB-DE5M.

Two years ago, Washington Attorney General Bob Ferguson (now the state's governor) also launched an investigation into the "sensitive records and materials" of two pro-life pregnancy centers, demanding confidential documents for no apparent reason other than the groups' pro-life views. Press Release: After ADF sues, WA Attorney

General Ends Illegal Campaign Against Pro-life Pregnancy Centers, ADF (May 28, 2024), bit.ly/3ZgjrIv. Ferguson only dropped the investigation when a center sued, alleging that the investigation "caused it to lose insurance coverage and to pay seven times more for replacement coverage." *Id.*

Heartbeat has been a focus of these attacks. In September 2023, California Attorney General Rob Bonta sued Heartbeat, attempting to punish its speech offering lifesaving information about abortion pill reversal—a viewpoint with which the Attorney General disagrees. *See The People of the California v. Heartbeat Int'l & RealOptions*, Heartbeat Int'l, perma.cc/KK4D-BEPX. And last year, New York Attorney General Letitia James brought a similar suit against Heartbeat. *See* Press Release: Attorney General James Sues Anti-Abortion Group and 11 New York Crisis Pregnancy Centers for Promoting Unproven Abortion Reversal Treatment, Office of N.Y. Att'y Gen. (May 6, 2024), perma.cc/NZM8-NKKD. NIFLA and other New York pregnancy centers filed suit against James for violating their speech rights under the First and Fourteenth Amendments and obtained a preliminary injunction blocking James from "from silencing the constitutionally protected speech of these pro-life ministries while their lawsuit moves forward." Press Release: Federal Judge Blocks NY Attorney General Letitia James from Censoring Pregnancy Help Ministries, Thomas More Society (Sept. 25, 2024), perma.cc/XN5U-2ZJH. Just this month, the Second Circuit unanimously affirmed the injunction. *See NIFLA v. James*, No. 24-2481 (2d Cir. Dec. 1, 2025).

At bottom, states are "leveraging their [] taxpayer pockets by creating new laws with vague investigative powers often coupled with enforcement mechanisms designed to harass caring people that simply want to help women make a different choice than abortion." Godsey, *supra*. But pregnancy help centers "set the standard for true compassion and support for women." *Id.* Indeed, "far from deceptively holding themselves out as providers of abortion," pregnancy help centers "hold themselves out as providers of an alternative to abortion." Jeff Jacoby, *Attacks on Pregnancy Centers, Like Attacks on Abortion Clinics, Should Be Intolerable*, Boston Globe (July 17, 2022), perma.cc/S78B-656D. And women "who find and utilize these pregnancy help services overwhelmingly give pregnancy centers 99 percent satisfaction ratings for the care they receive because it helps them through difficult times and puts them on a path toward success as parents." Godsey, *supra.*; *see* Moira Gaul, *Fact Sheet: Pregnancy Centers–Serving Women and Saving Lives*, Charlotte Lozier Inst. (July 2021), bit.ly/3V0haig.

### B. Pregnancy help centers also increasingly face threats of violence and violent attacks.

In addition to this political hostility, pregnancy help centers have increasingly faced threats and violent attacks too. This trend has only intensified following the *Dobbs* decision.

After the *Dobbs* leak, "a wave of vandalism and violence [was] unleashed against crisis pregnancy centers around the country." Jacoby, *supra.* "In one attack, arsonists firebombed CompassCare, a Christian pregnancy center in Buffalo, N.Y., shattering its

windows and destroying much of its interior." *Id.* In Longmont, Colorado, activists set the local pregnancy help center on fire. *Id.* In Anchorage, Alaska, vandals smashed the door of the Community Pregnancy Center and covered its parking lot with nails. *Id.* In Orlando, Florida, activists "decapitated, mutilated, and dumped" three animals in front of a pro-life pregnancy center. Stephanie Buffamonte, *Decapitated, Mutilated, Animals Left at Florida Pro-life Pregnancy Center*, Fox35 (May 12, 2023), perma.cc/9V99-Z2K4. A group of pro-abortion extremists operating as "Jane's Revenge" declared "open season" on pregnancy help centers across the country, promising to enact "revenge" against the centers, causing significant property damage, and spray-painting threatening graffiti slogans such as "If abortions aren't safe neither are you." Jacoby, *supra.*

These attacks have continued. After the 2024 Democratic National Convention, vandals splattered "red paint resembling blood" across a Chicago pregnancy center, cemented the doors shut, and spray painted "the dead babies are in Gaza" on the building. Michael New, *A Pro-Life Pregnancy Help Cetner in Chicago is Vandalized*, Nat'l Rev. (Aug. 24, 2024), bit.ly/413TiPB. On Labor Day weekend 2024, perpetrators vandalized a North Carolina pregnancy center, plastering "Go to Planned Parenthood" across the center's sign. Nancy Flanders, *Pregnancy Center in North Carolina Vandalized Over Labor Day Weekend*, Live Action (Sept. 4, 2024), perma.cc/LP9V-HEYF. And a few months later, activists painted ten swastikas on an Alaska pregnancy center and spread nails across the parking lot. Chris Klint, *FBI Seeks Suspect Who Painted Swastikas on Wasilla Pregnancy Center*, Alaska Public Media (Nov. 8, 2024), perma.cc/RF3X-GC5A.

These examples are just the beginning. Indeed, centers have faced more than 100 attacks since the *Dobbs* leak in May 2022. *See* Patty Knap, *A New Low: Pregnancy Center Board Member's Home Vandalized*, Pregnancy Help News, (Feb. 27, 2023), bit.ly/3KhROsi; *see also* New, *supra.* Activists have even targeted the private homes of those merely *associated* with pregnancy help centers. Knap, *supra.* (noting that activists vandalized the home of a pregnancy help center board member). And even though these actions clearly violate the Federal Access to Clinics Entrances Act, 18 U.S.C. §248, they have largely gone unprosecuted by the Department of Justice and ignored by pro-abortion officials.

At bottom, Heartbeat and other pregnancy help centers are increasingly the target of violent and unjustified attacks to silence them.

\* \* \*

Section 6.1(1) is just one of many laws that represent the increasing "[w]eaponiz[ation] … of government against ideological foes." *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 879 F.3d 101, 113 (4th Cir. 2018). If this Court allows states to relabel speech as conduct merely because it takes place in a professional setting, that weaponization will know no end. The decision below faithfully adheres to the Supreme Court's decision in *Becerra*, and to the First Amendment's promises of free speech. This Court should do the same.

**CONCLUSION**

For these reasons, the Court should affirm the decision below as to the benefits discussion requirement.

Respectfully submitted,

/s/ *Tiffany H. Bates*

| | |
|---|---|
| Kelly J. Shackelford | Patrick Strawbridge |
| Jeffrey C. Mateer | Tiffany H. Bates |
| David J. Hacker | ANTONIN SCALIA LAW SCHOOL |
| Jeremiah G. Dys | SUPREME COURT CLINIC |
| FIRST LIBERTY INSTITUTE | CONSOVOY MCCARTHY PLLC |
| 2001 West Plano Parkway | 1600 Wilson Boulevard, Suite 700 |
| Suite 1600 | Arlington, VA 22209 |
| Plano, TX 75075 | (703) 243-9423 |
| (972) 941-4444 | tiffany@consovoymccarthy.com |
| kshackelford@firstliberty.org | |
| | |
| December 26, 2025 | *Counsel for Amicus Curiae* |

16

**CERTIFICATE OF COMPLIANCE**

This brief complies with Rule 29 because it contains 3,529 words, excluding the parts that can be excluded. This brief also complies with Rule 32 because it is prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

Dated: December 26, 2025                                   */s/ Tiffany H. Bates*

**CERTIFICATE OF SERVICE**

I filed this brief on the Court's electronic filing system, which will email everyone requiring notice.

Dated: December 26, 2025                                   */s/ Tiffany H. Bates*